**ELKHART COUNTY BOARD OF ZONING APPEALS Appellant–Defendant,**

v.

**EARTHMOVERS, INC., Appellee–Plaintiff.**

No. 20A05–9307–CV–250.

Court of Appeals of Indiana, Fifth District.

March 28, 1994.

Transfer Denied July 27, 1994.

---

James W. Kolbus, Mark A. Armstrong, Hartzog Barker Hepler & Saunders, Goshen, for appellant.

Richard W. Paulen, Jackqueline Sells Homann, Barnes & Thornburg, Elkhart, for appellee.

SHARPNACK, Chief Judge.

The Elkhart County Board of Zoning Appeals ("BZA") appeals the trial court's decision in favor of Earthmovers, Inc. ("Earthmovers") reversing the BZA's decision denying Earthmovers' petition to remove a condition placed on Earthmovers' special use permit to operate a landfill. We reverse in part and affirm in part.

The BZA presents two issues for our review, which we restate as (1) whether the trial court erred in finding that the condition attached to Earthmovers' special use permit was void, and (2) whether the trial court erred in remanding the issue of changed circumstances to the BZA for further proceedings.

In 1975, Seth and Emma Rohrer applied to the BZA for a special use permit for a sanitary landfill to be operated by Earthmovers, who intended to lease the property from the Rohrers. After several hearings on the application, the BZA approved the special use permit and imposed a number of restrictions and conditions, among which was the following:

"12. The sanitary landfill shall be a private landfill to be used only by Earthmovers, Inc., and its affiliated companies."

Record, p. 28. Earthmovers began operating its landfill in July, 1976.

In 1988, Earthmovers, who was then purchasing the property under a land contract, applied to the BZA for a modification of the permit to expand the area of the sanitary landfill by incorporating approximately 16 additional acres and increasing the vertical fill allowance. The application was granted under the conditions attached to the original permit and several additional conditions.

In 1992, Earthmovers applied to the BZA for a modification of the permit to remove the condition restricting use of the landfill to Earthmovers and its affiliates ("Condition 12"). In its application, Earthmovers contended that Condition 12 was void because it regulated the persons using the land rather than the land use. After a public hearing, the BZA denied Earthmovers' request, finding that Condition 12 was "not void and should not be changed as the support for that change has not been proven in the testimony presented, and the only reason for a change is economic in nature." (Record, p. 103.)

Earthmovers appealed the BZA's decision in Elkhart Superior Court. After a hearing on January 26, 1993, the court reversed the BZA's decision, finding that Condition 12 was void because it related "only to the person using the land and not to the land use." Record, p. 384. Therefore, the court reasoned, the imposition of Condition 12 was not within the power granted to the BZA under the Indiana Code and the Elkhart County Zoning Ordinance.

When reviewing the decision of a zoning board, we are governed by the presumption that the board's action is correct in view of its expertise. *Allen v. Board of Zoning Appeals* (1992), Ind.App., 594 N.E.2d 480, 484. Neither we, nor the trial court, may conduct a *de novo* review of the board's actions, and we cannot reweigh evidence or substitute our judgment for that of the board. *Id.* "If it should appear that the evidence upon which the board of zoning appeals acted was devoid of probative value, [or] that the quantum of legitimate evidence was so proportionately meager as to lead to a conviction that the board's finding does not rest on a rational basis, ... the board's order will be set aside." *Newman v. Spence* (1991), Ind.App., 565 N.E.2d 350, 353.

I

The central issue in the present case is whether Condition 12 is a void condition, and thus subject to collateral attack at any time, or merely a voidable condition, in which case the error had to have been appealed within the statutory time limit.[1] The question of voidness turns on the issue of whether the BZA exceeded its statutory authority in imposing Condition 12. It is well settled in Indiana law that a zoning board may "not act in excess of the power granted it under the statutes and zoning ordinance, and any acts in excess of these [are] *ultra vires* and void." *Anderson Lumber & Supply Co. v. Fletcher* (1950), 228 Ind. 383, 89 N.E.2d 449, 452. If we find that the BZA did not exceed its authority in imposing Condition 12, the condition is at worst voidable. If Condition 12 is voidable rather than void, the fact that Earthmovers did not appeal the BZA's decision in 1975 or 1988, when the condition was imposed and reimposed, means that the error is waived and this court is required to reverse the trial court's decision.

1. Decisions of a zoning board of appeals must be appealed within 30 days. I.C. § 36–7–4–1003(c).

The ultimate question before us, then, is whether the BZA may, within its powers under the statutes and zoning ordinance, impose as a reasonable condition in a special use permit that the special use be conducted by a specific person or entity only.

■ The statutory scheme governing the powers of zoning boards focuses upon the legitimate ends of zoning regulation as an exercise of the police power of the state, "which can only be exercised in the general public interest of safety, health, and morals." *Board of Zoning Appeals of Meridian Hills v. Schulte* (1961), 241 Ind. 339, 172 N.E.2d 39, 43. Under Ind.Code § 36–7–4–918.2, a board of zoning appeals is empowered to impose reasonable conditions on the grant of a special use permit. This statute reads:

"A board of zoning appeals shall approve or deny all:

(1) special exceptions;

(2) special uses;

(3) contingent uses; and

(4) conditional uses;

from the terms of the zoning ordinance, but only in the classes of cases or in the particular situations specified in the zoning ordinance. *The board may impose reasonable conditions as part of its approval.*"

I.C. § 36–7–4–918.2 (emphasis added). Under Ind.Code § 36–7–4–201, the purposes of local planning and zoning include, in pertinent part, "to improve the health, safety, convenience, and welfare of their citizens and to plan for the future development of their communities . . . ." I.C. § 36–7–4–201(b). This purpose is implemented by the Elkhart County Zoning Ordinance, which provides that:

"The Board shall hear, and approve or deny, all special uses as specified in the Zoning Ordinance. A special use may be approved under this section only upon a written determination that:

1. The special use is consistent with the spirit, purpose and intent of this ordinance;

2. It will not substantially and permanently injure the appropriate use of neighboring property; and

3. It will substantially serve the public convenience and welfare.

The Board may impose conditions as part of its approval."

Record, p. 274. Finally, under Elkhart County Zoning Ordinance Specifications F, the BZA may "impose conditions . . . which the Board deems essential to insure that the Special Use is consistent with the spirit, purpose and intent of this ordinance, shall not substantially and permanently injure the appropriate use of neighboring property, and shall substantially serve the public convenience and welfare." (Record, p. 310.)

■ The BZA argues that Condition 12 is a reasonable condition under the statutes and zoning ordinance in that it limits the intensity of use of the landfill property by limiting traffic onto the site. The BZA contends that regulation of traffic is a land use consideration which may be regulated through the imposition of conditions. See I.C. § 36–7–4–601(c)(2) ("When it adopts a zoning ordinance, the legislative body shall act for the purpose of: . . . [l]essening or avoiding congestion in public ways[.]") Earthmovers counters that Condition 12 is void because the BZA has no power to regulate who uses the land. Earthmovers concedes that Indiana law is silent on this subject, and cites cases from several other jurisdictions where conditions restricting the persons using the land have been found impermissible. Earthmovers urges us to adopt as a rule of law the proposition that conditions which regulate the person who uses the land are beyond the authority of a zoning board.

In its decision to grant the special use permit in 1975, the BZA did not specify its reasons for imposing Condition 12. Earthmovers contends that Condition 12 has no rational basis and speculates that the condition was imposed simply to mirror the lease provisions between Earthmovers and the owners of the property when the special use was first granted. Because no articulated basis for the BZA's decision exists in the record, we must determine whether Condition 12 rests on a rational basis within the purposes of the statutes and zoning ordinance—that is, whether based upon the evidence in the rec-

ord Condition 12 serves the community's interest in "health, safety, convenience, and welfare." I.C. 36–7–4–201(b). If so, the imposition of Condition 12 is within the BZA's authority and the condition is not void.

The minutes of the 1975 BZA meetings at which the permit was considered reveal that the testimony of an engineer, a chemist, and a realtor on behalf of Earthmovers was countered by the testimony of several remonstrators. The remonstrators, who included a professor of civil engineering, a realtor, and several owners of neighboring property, testified as to the potential for the depreciation of property values, the spreading of odor from the landfill, the contamination of water, and noise and air pollution. Testimony was also presented as to possible trench flooding resulting from the landfill, the questionable suitability of the soil to landfill purposes, and the destruction of wildlife and plant life due to pollution at existing landfills operated by Himco, Inc., an affiliate of Earthmovers. As noted above, we may not reweigh the evidence or substitute our judgment for that of the BZA; it was for the BZA to determine the credibility of the evidence presented by the remonstrators and Earthmovers. After an examination of the record, we find that to the extent that Condition 12 restricts traffic in the area of the landfill, thereby reducing noise pollution and vehicular congestion, it is rationally related to health, safety, convenience, and welfare. To the extent that Condition 12 reduces the amount of waste dumped into the landfill on a daily basis, thereby reducing air pollution, water pollution, odor and the blowing of trash onto neighboring property, it is rationally related to health, safety, convenience, and welfare. And to the extent that Condition 12 restricts responsibility and accountability for the operation of the landfill and any consequences thereof to one entity, it is rationally related to health, safety, convenience, and welfare. Earthmovers bore a heavy burden in appealing the BZA's decision. We find that Earthmovers has failed to show that the evidence upon which the BZA acted was devoid of probative value or that the quantum of legitimate evidence was so proportionately meager as to lead to a conviction the BZA's finding does not rest on a rational basis.

■ Earthmovers argues that Condition 12 does not, on its face, regulate traffic, and the BZA concedes that Condition 12 should have been better worded to show the intent to control traffic. However, Earthmovers has failed to show that Condition 12 was not intended to regulate traffic around the landfill. As noted above, the record shows that evidence was presented at the 1975 hearings that provides support for the imposition of Condition 12. Only in the absence of such evidence may the BZA's decision be reversed.

■ We reject Earthmovers' assertion that conditions imposed on special use permits may under no circumstances regulate who uses the land. Public policy supports such a rule when the condition restricts who may own the property—any such restriction would be a restraint on alienation—or when the condition is an economic privilege that terminates with a change of ownership of the property. In the latter case, the condition would violate the fundamental principle that the zoning power may only be exercised in the general public interest; "[i]t was never intended that zoning laws should be used for the purpose of creating special privileges or private rights in property...." *Meridian Hills*, 172 N.E.2d at 43. Such special privileges and private rights were at the heart of the decisions in *Mechem v. City of Santa Fe* (1981), 96 N.M. 668, 634 P.2d 690, and *Dexter v. Town Board of Town of Gates* (1975), 36 N.Y.2d 102, 365 N.Y.S.2d 506, 324 N.E.2d 870, two cases cited by Earthmovers. In *Dexter*, where the challenged condition provided that the rezoning of the site as a retail shopping center "shall inure to the benefit of Wegman Enterprises, Inc., only," the court held that the condition was "plainly personal" and did "not relate to the use of the property and the zoning thereof." *Dexter*, 365 N.Y.S.2d at 507, 324 N.E.2d at 871. *Dexter* is similar to the present case in that the condition at issue regulated a specific entity; *Dexter* may be distinguished by the fact that the condition in *Dexter* had no rational basis in the zoning board's authority or purposes. In *Mechem*, where a special exception per-

mitting the operation of a private tennis club required that the exception terminate with any change in ownership of the property, the court found that "it is not within the proper function of the zoning authority to condition an exception to the use of real property upon personal rights of ownership rather than use." *Mechem,* 96 N.M. at 672, 634 P.2d at 694. The court held that

> "[t]he statutes do not expressly provide for regulation of land by making a special exception personal to a particular owner. Any power to do so must be by necessary implication and must reasonably relate to the objectives of zoning."

*Id.* Because the special exception did not reasonably relate to zoning objectives, it was held *ultra vires* and unenforceable. Unlike the condition in *Dexter* and the special exception in *Mechem,* Condition 12 is, as discussed above, rationally related to the objectives of the statutes and zoning ordinance.

■ Condition 12 is, however, flawed by its designation *by name* of the entity who will be permitted to utilize the landfill; such specificity makes it impossible that subsequent owners of the land may enjoy the special use permit without going before the BZA to have inserted into Condition 12 the name of the entity who will be taking over operation of the landfill. The condition would have been more artfully drafted by including language to the effect that the landfill "shall be a private landfill to be used only by its operator and affiliated companies." The specificity of Condition 12 as currently written does not, however, render it *ultra vires* and void. The function of Condition 12 in restricting use of the landfill to its operator is both legitimate under the statutes and zoning ordinance and supported by sufficient evidence presented to the BZA.

Accordingly, we find that Condition 12 is not void as a matter of law and that to the extent that Condition 12 was defective it was voidable. Therefore, Earthmovers waived error in the imposition of Condition 12 by failing to appeal the condition in a timely fashion.

## II

In its petition to remove Condition 12, Earthmovers argued in the alternative that the circumstances under which the permit was issued had substantially changed so as to require the condition to be removed. In denying the petition, the BZA stated that the only change of circumstance was economic in nature. On appeal to the trial court, Earthmovers again argued that changed circumstances justified removal of the condition. In response to this argument, the court found that the BZA had not properly articulated a standard for determining when changed circumstances could justify removal of a condition attached to a special use permit. In spite of its conclusion that Condition 12 was void, the court remanded the matter to the BZA for additional hearings, if necessary, and to articulate such standards specifically.

Earthmovers and the BZA are in apparent agreement that the trial court was correct in finding that the BZA had not properly articulated a standard for changed circumstances. We therefore affirm the trial court's order remanding the case to the BZA for further proceedings on this matter.

REVERSED IN PART AND AFFIRMED IN PART.

RUCKER and CHEZEM, JJ., concur.